STATE OF IOWA, Appellee, v. ROY ELLIOTT, Appellant.

**INTOXICATING LIQUORS:** Contempt—Evidence. Evidence held to
1   sustain a conviction for maintaining an intoxicating liquor nuisance.

**INTOXICATING LIQUORS:** Nuisance—"Place" Defined. An arti-
2   ficial clearing in an out-of-the-way locality on a river bottom, surrounded by horse weeds and grapevines, with some trifling erections in the way of poles, for the manufacture of intoxicating liquors, is a "place," within the meaning of Sec. 2384, Code, 1897.

**INTOXICATING LIQUORS:** Nuisance—Submitting Construction of
3   **Statute to Jury.** It is not reversible error to tell the jury, on an indictment for nuisance, so to construe the statute as to prevent evasions.

*Appeal from Dallas District Court.*—W. S. COOPER, Judge.

JUNE 24, 1924.

THE defendant was convicted of maintaining a liquor nui-

sance, and sentenced to pay a fine of $500. From the judgment entered, he appeals.—*Affirmed.*

*Edward S. Schuetz,* for appellant.

*Ben J. Gibson,* Attorney-general, *Maxwell A. O'Brien,* Assistant Attorney-general, and *Harry Wifvat,* County Attorney, for appellee.

STEVENS, J.—Appellant was indicted by the grand jury of Dallas County, with one Pearl Doty, on a charge of maintaining a liquor nuisance. He was tried separately, and convicted by the jury. The insufficiency of the evidence to establish guilt is one of the grounds relied upon for reversal. This contention is based upon two propositions: one that the evidence does not show guilt; and the other that it does not show that the business was carried on in a building, erection, or place, within the meaning and contemplation of Section 2384 of the Code.

1. INTOXICATING LIQUORS: contempt: evidence.

As to the sufficiency of the evidence to establish appellant's connection with and participation in the nuisance charged, if one is shown, we think there can be little doubt. On the morning of July 27, 1923, the defendant, in company with Pearl Doty, was arrested in Des Moines Township, Dallas County, near the Des Moines River, in an out-of-the-way place in the weeds and willows. Eight barrels of mash, a still, and about four dozen empty jugs were found. The still was disconnected, and parts hidden in different places in the weeds. The arrest was made about 6:30 A. M. Doty lived about half a mile, and appellant about twelve miles, from the place where they were arrested. The evidence tended to show that appellant visited the place of his arrest about 6:30, went away, and a few minutes later returned, in company with Doty. The sheriff, a deputy, and another officer concealed themselves in the weeds near by, and some of them saw appellant pump some water from a well into a vessel, and put it in a boiler on a gasoline stove. Appellant and Doty were also seen to take some of the mash out of one of the barrels. The gasoline stove was lighted when the officers came upon the scene. The sheriff testified that appellant told

them his name was Smith, and that he lived in Illinois; and that he later admitted his guilt. Appellant stoutly denied that he had any connection whatever with the enterprise, and explained his presence on the occasion in question by saying that he was on his way to a mining camp, to solicit orders for berries which he raised and disposed of upon orders; and that he met Doty, and went to the place where he was arrested with him, with the understanding that Doty would accompany him to the camp and introduce him to the miners and other prospective customers. The two men had been long acquainted. They were taken to Woodward and placed in the city jail, from which, a very short time afterwards, they escaped. Appellant was, some days later, apprehended at his home. The evidence, we think, is clearly sufficient to sustain the verdict on this point.

The second proposition involves the construction of Section 2384, which has been too often quoted in the opinions of this court to justify setting it out in full. The material portion, however, of the section is as follows:

"Whoever shall erect, establish, continue or use any building, erection or place for any of the purposes herein prohibited, is guilty of a nuisance, * * * and the building, erection or place, or the ground itself, in or upon which such unlawful manufacture or sale or keeping with intent to sell, use or give away said liquors is carried on or continued or exists, * * * shall be abated as hereinafter provided."

It must be conceded that the business of appellant and his associate was not carried on in a building. An erection admits of a much broader definition. A building is an erection, but an erection is not necessarily a building, within the meaning of the statute. An "erection" is a structure of any kind, and need not have a roof or covering, or be entirely inclosed. A "place" is of much broader significance than "erection." Assuming, for the purpose of this case, that the word "place" means an erection having some appearance of permanency or fixedness, to which customers may resort for the purpose of purchasing intoxicating liquors, and that it need not be a building, or an erection of the nature thereof, do the facts bring it within the purview and meaning of Section 2384? The place in question is described

2. Intoxicating liquors: nuisance: "place" defined.

as a depression in the ground, a kind of an old bayou, with big horse weeds and grapevines "very thick surrounding it." There was no covering over the place, but it "was kind of built up, had some poles nailed up around there, and a big box there. The barrels were covered with blankets and with a canvas."

We think this was a "place," within the meaning of the statute. It had every appearance of permanency, both for the manufacture and sale of intoxicating liquors. Eight barrels partially filled with mash constituted a large quantity. This, together with four dozen empty jugs, vessels commonly used in the delivery and distribution of liquor, together with a still, conclusively shows that the purpose was to violate the prohibitory liquor law. The weeds had been cut out, so as to make an opening fully concealed, for convenience in carrying on the business. The purpose of the statute is to prohibit the sale of intoxicating liquors anywhere within the state; and it is not material that the defendants might have been prosecuted under other provisions of the statute, if a violation of the one upon which the indictment is based was shown.

The Supreme Judicial Court of Massachusetts, having under consideration a statute containing the following language, "Any building or place for a stable for more than four horses," defined the word "place" as follows:

"It applies, not only to a building, but also to any inclosure, whether covered or not. The statute is aimed at the nuisance which may be caused by the keeping of a number of horses, and it can make no difference whether they are kept in one building or in several, or are kept in the open air or in an inclosure." *Inhabitants of Brookline v. Hatch,* 167 Mass. 380 (36 L. R. A. 495).

See, also, *State v. Viers,* 82 Iowa 397; *State v. Herselus,* 86 Iowa 214; *State v. Snyder,* 108 Iowa 205; *Commonwealth v. Jones,* 142 Mass. 573, 575; *State v. Arnold,* 80 S. C. 383 (61 S. E. 891); *State v. Dykes,* 83 Kan. 250 (111 Pac. 179).

The only remaining question requiring consideration is the contention that the court committed error in Paragraph 7 of its charge to the jury. The court in this instruction told the

3. INTOXICATING
   LIQUORS: nui-
   sance: submit-
   ting construction
   of statute to
   jury.

jury that it was its duty to fully and fairly consider and weigh the testimony, and to so construe the same as to prevent evasions of the law with reference to the sale of intoxicating liquors. Doubtless the court had in mind the appellant's contention that the scene or location of his business was not a "place," within the contemplation of the law. The court did not define "a building, erection, or place," but submitted the question to the jury as to whether the business was carried on in a place which violated Section 2384. The giving of this instruction does not constitute reversible error.

Other questions discussed by counsel have been given proper consideration; but, as they present no ground for reversal, we deem it unnecessary to refer to them at length. Some rulings upon objections to testimony are complained of, but the objections are without merit. For the reason stated, the judgment of the court below is—*Affirmed.*

ARTHUR, C. J., DE GRAFF and VERMILION, JJ., concur.